First case. Case 11-034, Madison versus Maine, D.C. Hey, Counsel, how much time are you reserving for rebuttal? Just a minute or two. I couldn't hear you. Just a couple minutes. Two minutes would be fine. Two minutes? Okay. Keep your voice up. This is not a microphone. You're going to be competing with LaSalle Street. Okay. Keep your voice loud. Thank you. Good morning, Your Honors. My name is Nicole Jones of the Office of the State Appellate Defender. Representing the appellant in this matter, Mr. Benny Teague. I'd like to focus my argument today on the first issue raised in the brief, insufficient evidence to support the convictions for attempt to murder peace officers. This court in People v. Green determined that when a person who has been charged with attempt murder has previously fired in the direction of other individuals, two reasonable inferences can be made. The first inference, and does not hit any of those individuals, two reasonable inferences can be made. The first inference is that person did not have the specific intent to kill those other individuals. The second inference that can be made is that that person was a poor shot and missed his intended targets. Let me ask you a question. The jury heard all those arguments, didn't they? Yes. The jury did hear those arguments. Okay. I mean, there was no evidence that he shot in some other direction or he shot in the air or he shot into the ground. Okay. The only evidence is that he shot at the police officers and he missed. So you want us to come up with a law that if somebody shoots at a policeman and they miss, then there's no intent to kill. Is that what you asked us to do here? No, Justice Gordon. In this case, there's actually evidence that he shot at the ground and not at the officers. Here, looking at the evidence in the light most favorable to the State, What evidence is there that he shot into the ground? There are divots in the pavement. There are no bullet holes in the car except for the bullet holes caused by the officers who were shooting through the windshield. Was there a ballistic expert who testified that there was a shot in the ground? There were ballistic experts that testified that there was no damage to the police vehicle other than the bullet holes through the windshield. Okay. But the answer to my question is, was there a ballistic expert who testified that there was bullet marks in the ground? There was an expert who testified that they found divots in the ground, and that is where they found the five casings. They did not find any of the bullets. Nobody said it was bullets. No, they didn't recover the bullets. But here, if we look at the evidence that was presented by the State, we have evidence not that he was shooting directly at the officers, but he pointed the rifle just our way, and he faced us. But as soon as he turned around, I shouted to my partners, and this is from Officer McDermott, gun, gun, and he could no longer see the profile of the gun, but not that he shot the gun directly in their direction. When a person is charged with attempt murder, the State must prove him. Is this the testimony where Coss, or Officer Coss, observed where he said that the defendant pointed the rifle toward Coss and then moved a little to the left, and then, but a little to the left, wasn't that Officer Corbus? Well, Justice Hoppe, there is no evidence that he was. Because Coss turned around and then saw Corbus ducking down, correct? He did see Officer Corbus. So isn't that indicative that he was shooting toward, he decided to move his aim from Coss to Corbus? No, we don't believe that that's indicative of that. Officer Corbus testified that he saw a bright flash of light, not that he saw that the gun was directed at him. We don't know exactly where Officer Corbus was standing. There was no testimony about where Officer Corbus was standing at that time, other than that he was behind and we saw, and Coss saw him duck, which might have just been in response to seeing a bright flash of light. We do know directly from Officer Corbus, or from Officer Coss, that Mr. T aimed the rifle at him and then diverted it and put it in a different direction. Okay, but Coss had gotten out of the car, correct? And Corbus was sitting in the front. And first he aimed at Coss and then he turned and Coss saw Corbus duck down. Corbus was no longer in the car at that time. Officer Coss had rolled out of the car and then Officer Corbus had also gotten out of the car. So Officer Coss was the first one to get out of the car because he was one of the officers that was not shooting because he was in the back seat. He exited the vehicle first, then radioed in, and then continued to pursue Mr. Teague on foot. Mr. Teague turned around, aimed his weapon at Officer Coss. So Officer Coss saw Corbus duck and Officer Corbus saw a flash of light, but from those two you could not infer that the defendant was shooting at one of the officers? No, because there's no testimony that he was shooting at the officers. In fact, what we have is testimony to the contrary, that he was directing his weapon at one of the officers and then diverted it so as not to shoot that officer. Well, who said that? Officer Coss, and I'm going to quote what he said here, he pointed the rifle towards me, but then he quickly just moved a little to the left and discharged it again. I saw a flame coming out of the rifle. Okay, well, I mean, I don't know what you're trying to infer from that testimony, but how is this case any different than People v. Green? Are you familiar with that case? Yes, we cited People v. Green because in People v. Green, this Court held that there were two reasonable inferences that could be made. In People v. Green, this Court called it a classic drive-by shooting. In that case, he slowed down the vehicle, pointed his weapon at the car, and then struck the vehicle with one of the bullets. In fact, in People v. Green, the sunbird that the undercover officers were sitting in had a cylindrical gouge on the front passenger windshield, confirming that, indeed, the defendant in green did shoot at them. Here, in this case, there is no confirming evidence like that. He did not hit the vehicle, and we cannot infer that he was intending to hit these officers. The only inference that we can make here is that he did not have the specific intent to kill and that there was not evidence that he had the specific intent to kill. He did not make a statement about his intent, and the only evidence we have of his intent are that there were divots on the ground, none of the bullets hit the car or any of the officers. But did the jury hear all that, and they decided differently? Yes, and although the jury's determination is entitled to deference, it's not controlling here. Well, what you want us to do is make a law that poor marksmanship is a defense to attempted murder. Is that what you want us to do? No, that's not what I'm requesting. I'm saying that this is the rare case. where there is no evidence that he had the specific intent to kill, that this was poor marksmanship. This is the rare case where we have evidence that he diverted his weapon away from the officers. And because this is the rare case, because this is a unique case, we ask that you find that he did not have the specific intent, and the specific intent was not proven beyond a reasonable doubt in this case. I think I can get to one question. I hope I can. The first shot hit the ground near the car, or the divots on the ground. But the second time when he shot, and the officer said he arced, he did shoot straight out. I mean, there's no testimony that he then shot the ground for that second shot. There is testimony that there are two officers out there. Why couldn't the jury reasonably infer that he turned from one officer and shot at the other? Even if it's not direct evidence of it, because they're both out there chasing him, and Coss and Corpus both say that they are out there. We can't see which officer he's looking at other than from Coss' testimony. But isn't it reasonable for the jury to infer that he turned from Coss and shot at the other officer? Then how do we substitute our judgment for that of the triumphant who heard the evidence? Oh, I didn't know this was the mic. Did you hear me? Yes, I heard you. It was the state's burden to present evidence that there was another officer that he could have been shooting at at that time. And yes, there were two officers that were outside, but there's no evidence that Corpus was to the left of Coss, that he was anywhere where Benny Teague was directing his rifle at that time. And that was the state's burden, to show that he was somewhere in the direction that Mr. Teague was directing his weapon. But instead, all we have is evidence that he ducked because he saw a light. And why would he duck? He ducked, he saw a flash of light. I had asked you this earlier. Why would he duck if someone wasn't shooting at him? He ducked because he saw a flash of light. And what was the flash of light? The flash of light was a discharge of a weapon, but it was not necessarily in his direction. They ducked as soon as they saw that he had a gun. As soon as McDermott said the word gun, they all ducked down in the car. But this wasn't just a gun or a rifle. This was an AK-47 assault rifle. It was a Roman Cougar, correct? I mean, this is a killer type of thing. I mean, some of the soldiers don't even have things that good. I mean, this is designed to kill people. While this is a very threatening weapon, the facts show that there is no evidence that he directed it at the officers, and the facts show that he directed it away from them and did not hit the vehicle. Well, there is evidence, you see, that he directed towards police officers when police officers testify that they saw a burst of light coming. That's evidence, you see. Everything the officers say is evidence. Everything the witnesses say is evidence. And the jury hears all of the evidence, all of the arguments. They made a determination as to what the facts are, and they found this man guilty. Correct, Justice Gordon. We would say that there was not a reasonable inference here that he was firing at the officers and that he had the specific intent to do that. I mean, you want us to decide that this particular defendant wasn't shooting at the officers, but he had already shot a man who was basically his friend who hired him after he got out of prison, didn't he? We are not contesting the facts of the murder. Okay. I mean, this is the kind of individual that he is. I mean, the jury could take all that into consideration in deciding the case, can't they? Yes, but at this point he shot a man who befriended him, gave him a job when nobody else would give him a job, and yet the police come and he wasn't shooting at them. In other words, he missed. None of the evidence about the job or about their friendship came in at trial. At trial, all we know is that there was a murder, and as he was fleeing, and that seems to go to what his intent was. He was trying to get away from the officers at that time. He shot toward the ground, and when an officer left the vehicle, he directed his gun away. Counsel, your time is concluded. You have two minutes for rebuttal. One other thing. Wasn't there a witness at trial who testified he used his own body to shield children? When he saw that guns were coming out, he did hear fire, but he could not see where the bullets went or what direction or who was firing. Well, who could see where the bullets go? I mean, who has that kind of view except for Superman? I mean, they can see where the weapon is directed, and there was no direct evidence or evidence from the officers that he directed the weapon at them. For these reasons, we ask that you reverse Mr. Teague's convictions of attempt to murder peace officers outright. Thank you. Thank you. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. The Green case is very instructive here because in that case, the court stated that when there are... Excuse me, counsel, I didn't get your name. Janet Mahoney. In the Green case, the court stated that when there are competing inferences, it is for the jury to decide what inference should be followed, and in this case, the jury found that the defendant had the intent to kill when he fired his AK-47 at the three police officers. It's the people's position that there is only one inference that can be found in this case, and that is intent to kill. In this case, the defendant exited his vehicle, shouldered his AK-47 to make it more steady, aimed it at the three police officers, fired it, moved closer to the car, fired it, moved close to the car, and fired it. Then he turned and fled. Two of the officers got out of the car and were chasing him, and as they were chasing him, he stopped, he turned around, he shouldered the AK-47 again, and he fired it. While initially he pointed it at Officer Cos, yes, he did, he redirected it to Officer Corbis. Officer Cos said that he saw a flash, and then he turned and saw Officer Corbis duck. Officer McDermott was in his car, and he said that he saw the defendant fire the AK-47 at his partners. There is only one inference that can be found from this evidence, and that is that the defendant intended to kill those police officers who was merely a poor marksman. Well, what if there's all kinds of inferences? Isn't it the jury who decides what those inferences are? It is the jury's decision, and it's the jury who spoke loud and clear in this case, and that is the defendant intended to kill these police officers in this case. Unless the court has any other questions, if people ask that you refer them. What's the significance of him turning away? What's the significance of there being, you know, if he was firing an AK-47 at a vehicle 40 feet away, you know, surely some bullets would have hit that vehicle. He's a poor marksman. It's a tense situation. Surely the police officers intended to strike him with their bullets. But you just were talking about how calm he was, that he fired, he was advancing and firing, advancing and firing, and now you're saying, you know, there was an intense situation and it was poor marksmanship, as though the defendant was shaken, which one isn't? Well, it's not one or the other. What it is is, yes, he was intentionally shooting, moving closer and shooting. When he turned the corner, perhaps, perhaps he saw that Officer Corbis in the front seat in the semi-automatic weapon. One of the officers said that he was stepping backwards after he had advanced, then he retreated backwards. That was when he was retreating, and perhaps that was when he saw that Officer Corbis had his semi-automatic weapon out. Officer McDermott only had a gun with six shots in it, and all six he had already fired. And McDermott testified that while shooting, the defendant began trotting backward. After the first four. There's a trail of cartridges that go toward the car, and it was only after that that he retreated. The opposing counsel said there were only divots on the ground. You're saying that there were a trail of cartridges. The cartridges, as they were falling out as he was shooting, the divots were from where the bullets were striking. There is no testimony as to how many bullet strikes were on the pavement, just that there were bullet strikes on the pavement. Is there testimony on how many cartridges? There were five. There were five cartridges. Four of them a trail toward the car, and one as he was leaving. Thank you. Unless there are any other questions, the people request that you affirm the conviction and sentence. Thank you. Thank you, Counsel. Rebuttal. Do you want to talk about his jail sentence? Your Honor, I would like to talk about his jail sentence. I mean, if that's one of your arguments in your brief, you may want to talk about it. Our argument is that the sentence is excessive based on Mr. Teague's poor upbringing and terrible background. His mother murdered his father, and he realized that at 12 years old. He suffered from bipolar disorder and has since been going to classes and getting degrees. He received the maximum sentence on the murder, and he received 30 years higher on each of the attempt murders, We ask that in consideration of his horrible upbringing that this court reduce his sentence. Well, here's a man who gets out of prison and somebody hires him and gives him a job, and he goes and shoots that guy. Is this the kind of person that we want on the streets? Somebody who shoots somebody who gives them a job when nobody else would give them a job? Is that the kind of person we should put on the streets? I'm saying that... We're not saying that what he did was not reprehensible. Of course it was. All murders are terrible. This one was terrible. I mean, should he ever be put back into society? Even at the minimum here, he would receive 45 years on the murder and 20 years on an attempt murder, so that would be 65 years when Mr. Teague committed these crimes. He was 38 years old, so we're not talking about a young man that would be on the street. He would be over 100. I just wanted to make two factual clarifications in rebuttal. One, the state argued that... McDermott said that Mr. Teague fired at the other officers. He fired that he believed that he fired at the other officers because he saw a flame of light. Not that he saw that he fired at the other officers. He saw a flame of light. He was reloading his weapon. And secondly, there was no testimony as to Mr. Teague aiming his weapon at the officers. If there are no further questions, Your Honors. Thank you, Counsel. This matter will be taken under advisement.